## SOUTHERN CASUALTY CO. et al. v. FULKERSON.*

No. 12312.

Court of Civil Appeals of Texas. Fort Worth. April 26, 1930.

Rehearings Denied July 5, 1930.

*Writ of error granted.

912

Levy & Evans and Thompson & Barwise, all of Fort Worth, for appellants.

Ernest May, of Fort Worth, and Caldwell, Gillen, Francis & Gallagher, of Dallas, for appellee.

CONNER, C. J.

This is an action under the Workmen's Compensation Law to set aside an award of the Industrial Accident Board in favor of J. C. Fulkerson and the Century Indemnity Company. The award was entered on the 17th day of October, 1928, compensation being allowed Fulkerson at the fixed rate of $12.46 a week, beginning on May 24, 1928, and to continue thereafter unless altered or modified in accordance with the terms and provisions of the Employers' Liability Law not longer than 401 weeks. Fulkerson was an employee of the Dallas Transportation Company, which was a subscriber of the appellant casualty company under the Workmen's Compensation Law, and in the complaint be-

fore the Accident Board the Century Indemnity Company was also made a party on the complaint of Fulkerson.

The petition contains this recitation relating to the Century Indemnity Company, to wit:

"This, claim for compensation was set against the Southern Casualty Company and Century Indemnity Company, and upon a consideration of the evidence submitted it is the opinion of the Board and it finds that said Century Indemnity Company is entitled to be acquitted and discharged from all liability herein for the reason that said Dallas Transportation Company was a subscriber of the Southern Casualty Company and therefore claim for compensation against the Century Indemnity Company must be and the same is hereby denied and refused and said Century Indemnity Company must be and is hereby fully and finally acquitted and discharged from all liability on account of said claim, and it is so ordered, adjudged and decreed by the said Board."

Appellant Southern Casualty Company filed its petition in the district court of Tarrant county on November 17, 1928. The complaint was made of J. C. Fulkerson and the Century Indemnity Company, and for cause of action the petition recites that the plaintiff is a corporation doing business in Texas by virtue of a permit and that Fulkerson is a resident of Tarrant county, and the defendant Century Indemnity Company is a corporation with an office in the city of Dallas, Dallas county. That on the 17th day of October, 1928, the Industrial Accident Board made its "final award," a copy of which was attached to the plaintiff's petition. It was alleged that said award was a "final award"; that the injury to Fulkerson, if any, was sustained in Tarrant county; that the plaintiff on the 31st day of October, 1928, the same being within 20 days of the date of said award, gave notice to the Industrial Accident Board that it was not willing to and would not abide by said final award, decision, and ruling of said board, and that it would within 20 days from the service of said notice file suit in some court of competent jurisdiction in the county where J. C. Fulkerson was injured for the purpose of having said award set aside, annulled, and held for naught, and for trial de novo. The prayer was that the defendants be cited and that on trial plaintiff have judgment decreeing the award of the board to be of no force or effect.

Both Fulkerson and the Century Indemnity Company were duly cited and appeared and answered.

Appellee Fulkerson answered by a general demurrer and a general denial and specially alleged that the Southern Casualty Company was a corporation engaged in the business of writing workmen's compensation in-

surance under the terms and provisions of the Employers' Liability Law; that the defendant Century Indemnity Company was likewise a corporation engaged in writing workmen's compensation insurance; that prior to the 24th day of May, 1928, he (Fulkerson) entered upon the employment of the Dallas Transportation Company, a corporation, whereby Fulkerson was obligated to work six days a week and receive therefor the sum of $4.80 per day, the transportation company being at all times mentioned engaged in the business of performing general excavating work in the hauling of dirt, sands, gravel, and other and similar commodities within the state of Texas, and had in its employ three or more workmen within the meaning and terms of the Employers' Liability Law; and had, prior to the 24th day of May, 1928, purchased and received a certain policy of workmen's compensation insurance from the Southern Casualty Company which was in full force and effect on the 24th day of May, 1928, when the defendant Fulkerson received his injury described in his answer.

In the alternative, Fulkerson pleaded that should it appear that the Southern Casualty Company was not the insurer of the Dallas Transportation Company and that compensation insurance of said transportation company had not been issued to and in effect on May 24, 1928, then such compensation insurance had been issued to the Century Indemnity Company for the purpose of enabling the Dallas Transportation Company to subscribe to the Employers' Liability law and that said policy was in full force and effect on May 24, 1928.

Fulkerson then alleged that about 3:30 o'clock on the 24th day of May, 1928, while employed in operating an air drill for the Dallas Transportation Company in the city of Fort Worth, the bit of said drill became lodged in the rock or hard clay and Fulkerson stooped over, placed both his arms around the air drill, and pulled up heavily and quickly in order to free or dislodge said air drill from the rock or clay, and at the instant of time that Fulkerson pulled up on said air drill from a stooping position, an intense sharp pain was then and there produced in his groin, injuring him in the following described manner:

"The soft tissues of the left abdomen in the vicinity and region of the left groin that hold in place the intestines have been torn apart, ruptured and severed, and said injury has produced such a derangement of the organs of the body in the region of the left abdomen or left groin as to produce a continuous and constant pressure against the left spermatic cord; that in and around the site of the injuries, towit, the left abdomen and the left groin, that there has formed as a direct result of said injury and accident scar tissue, which has contracted and drawn the organs in the immediate vicinity of said injury out of their normal position in his body."

It was further specifically alleged that:

"The accident and injury * * * resulted then and there in a rupture or hernia, or in a splitting or severing of the soft tissues of the abdomen and that said hernia or rupture or splitting of the soft tissues of the left abdomen appeared suddenly and immediately following the injuries and that said hernia, rupture or splitting of the soft tissues of the left abdomen did not exist in any degree prior to the injury and accident as above described; that said injuries were then and there accompanied by pain; and on or about the 28th day of May, 1928, the defendant J. C. Fulkerson submitted himself to a reputable, duly authorized, licensed physician and surgeon, for an operation for said injuries but notwithstanding all of the effects and results have continued and do continue because of said injuries and the defendant J. C. Fulkerson further alleges that said operation, which he underwent, was not successful and did not cure or correct any of the injuries or results from said injuries that he received on the 24th day of May, 1928."

Further allegations were to the effect that Fulkerson had made timely complaint to the Industrial Accident Board and of the Southern Casualty Company and of the Century Industrial Company and of the Dallas Transportation Company, resulting in the award heretofore referred to.

Further allegations made were intended to show that Fulkerson was entitled to a lump-sum settlement for which he prayed.

The Century Indemnity Company answered both the petition of appellant Southern Casualty Company and the cross-action of appellee Fulkerson by a general demurrer and a general denial. The reply of the plaintiff casualty company was simply a general demurrer and a general denial directed to the answer and cross-petition of Fulkerson.

The court overruled all demurrers mentioned and upon the conclusion of the evidence submitted the case to the jury upon special issues. The jury found that the defendant Fulkerson "received an injury to his body that resulted in a hernia" while working for the Dallas Transportation Company on the 24th day of May, 1928; that such injury was received by him during the course of his employment with the Dallas Transportation Company; that the hernia appeared suddenly and immediately following the injury he sustained, and was then accompanied by pain; that the hernia did not exist in any degree prior to the injury; that J. C. Fulkerson has been totally disabled to perform labor on account of the injury, and that such injury was permanent; that the daily wage of a person performing like or similar work to that which Fulkerson per-

formed for the Dallas Transportation Company on the 24th day of May, 1928, was $4.80 per day; that manifest hardship and injury will result to the defendant Fulkerson if the insurer or insurers herein fail to redeem their liability in one lump sum rather than in weekly installments; that the Dallas Transportation Company was a subscriber to the Workmen's Compensation Law on the 24th day of May, 1928; that at the time in question the Dallas Transportation Company was carrying policies of workmen's compensation insurance in the Southern Casualty Company and the Century Indemnity Company.

Upon the verdict so rendered, the Court entered its judgment that:

"Defendant J. C. Fulkerson do have and recover of and from Southern Casualty Company, plaintiff, and Century Indemnity Company, defendant jointly and severally, the sum of $5618.49, together with interest thereon at 6% per annum from date of judgment until paid, and that he have his execution therefor."

From the judgment so entered, the Southern Casualty Company and the Century Indemnity Company have each separately and in due form prosecuted an appeal to this court.

■■ We will first dispose of the appeal of the Century Indemnity Company. Error has been assigned to the action of the court in overruling the general demurrer of that company to the petition of the appellant Southern Casualty Company and we think the court erred in overruling the demurrer. While the petition of the casualty company in its introduction names the Century Indemnity Company as well as J. C. Fulkerson, there is not a word in the petition that shows or tends to show that the Century Indemnity Company owed any duty whatever to the casualty company or was liable to that company upon any theory whatever. Nor is there any allegation that in any event the Century Indemnity Company would be liable to the casualty company in the way of indemnity, subrogation, or otherwise, and nothing is better settled in our decisions than that a plaintiff's pleadings to entitle him to a recovery must set forth some maintainable ground of recovery or cause of action. This seems so well settled that we deem it wholly unnecessary to cite authorities in its support. It is accordingly ordered that as to the complaint of the casualty company the general demurrer of the Century Indemnity Company should have been sustained, and that as to it the casualty company should take nothing.

The Century Indemnity Company also complains of the action of the court in overruling its general demurrer to the petition or cross action of Fulkerson, and also complains of the refusal of the court to give to the jury a requested peremptory instruction in its favor. The first five propositions of this appellant invoke a construction of several articles of the Workmen's Compensation Law (Rev. St. 1925, arts. 8306–8309). Section 12b of article 8306 of part 1 of that law provides, in so far as it is necessary to state, that:

"In all claims for hernia resulting from injury sustained in the course of employment, it must be definitely proven to the satisfaction of the board:

"1. That there was an injury resulting in hernia.

"2. That the hernia appeared suddenly and immediately following the injury.

"3. That the hernia did not exist in any degree prior to the injury for which compensation is claimed.

"4. That the injury was accompanied by pain."

This section further provides that:

"In all such cases where liability for compensation exists, the association shall provide competent surgical treatment by radical operation. * * * If the employee submits to the operation and the same is successful, which shall be determined by the board, he shall in addition to the surgical benefits herein provided for be entitled to compensation for twenty-six weeks from the date of the operation. If such operation is not successful and does not result in death, he shall be paid compensation under the general provisions of this law the same as if such operation had not been had."

Section 15 of the same article provides that:

"In cases where death or total permanent incapacity results from an injury, the liability of the association may be redeemed by payment of a lump sum by agreement of the parties thereto, subject to the approval of the Industrial Accident Board. This section shall be construed as excluding any other character of lump sum settlement except as herein specified. In special cases where in the judgment of the board manifest hardship and injustice would otherwise result, the board may compel the association in the cases provided for in this section to redeem their liability by payment of a lump sum as may be determined by the board."

Section 4 of article 8307, part 2, of that law provides, among other things, that:

"All rulings and decisions of the board relating to disputed claims shall be upon questions of fact and in accord with the provisions of this law."

■ The general demurrer of the Century Indemnity Company to the petition or cross-action of appellee Fulkerson was also well taken we think. Section 5 of article 8307, part 2, of the Workmen's Compensation Law, provides that:

"All questions arising under this law, if not settled by agreement of the parties inter-

ested therein and within the provisions of this law, shall, except as otherwise provided, be determined by the board. Any interested party who is not willing and does not consent to abide by the final ruling and decision of said board shall within twenty days after the rendition of said final ruling and decision by said board give notice to the adverse party and to the board that he will not abide by said final ruling and decision. And he shall within twenty days after giving such notice bring suit in the county where the injury occurred to set aside said final ruling and decision and said board shall proceed no further toward the adjustment of such claim, other than as hereinafter provided. Whenever such suit is brought, the rights and liability of the parties thereto shall be determined by the provisions of this law."

In neither the pleadings of the appellee Fulkerson, nor in the evidence of any of the parties, does it appear that the above section of article 8307 was complied with in an effort to set aside the award in favor of the Century Company. Appellee Fulkerson in neither pleading nor evidence shows that within 20 days after the award of the Accident Board he gave notice to the board or to any other party that he would not abide by the final ruling and decision. As noted in the beginning, the award was on the 17th day of October, 1928. Fulkerson's answer and cross-action was not filed until December 24, 1928, more than 20 days after the rendition of the award. The award therefore was as to him final and the district court was without jurisdiction.

In Mingus v. Wadley, 115 Tex. 551, 285 S. W. 1084, by the Supreme Court, in an opinion by Chief Justice Cureton, it is definitely held that all rights to be enforced and remedies provided for are purely statutory; and that the statutory provisions are mandatory and exclusive. That each step towards the maturity of compensation claim from time of injury to final adjudication is a mandatory requirement necessary to an exercise of jurisdiction by each statutory agency, and that timely notice of an intention not to abide by an award and timely suit must concur before jurisdiction of suit to vacate the award attaches.

The Amarillo Court of Civil Appeals, in the case of Texas Employers' Association v. Nelson opinion by Mr. Justice Randolph, 292 S. W. 651, held that notice within 20 days to the Accident Board and adverse party of refusal to abide by the decision was jurisdictional.

Our attention has been called to the case of Maryland Casualty Company v. Baker, 277 S. W. 204, 205, by the Waco Court of Civil Appeals. That case holds that where a joint award is made against two surety companies, one of which within 20 days gave notice of appeal and within 20 days after such notice

sued to set aside the award, the same was vacated, or at least suspended, and suit could not be brought by claimant against the surety company which had failed to give notice of appeal within twenty days after the award. The facts show that one M. A. Baker was killed in the course of his employment with one of two parties, to wit, either F. D. Tuttle or the Beverly Oil Syndicate, whose affairs were so intermingled that the Industrial Accident Board could not determine which of the said employers Baker was actually serving, or whether he was actually serving both of them. The award was therefore made jointly against both the Ocean Accident & Guarantee Corporation which insured Tuttle, and the Maryland Casualty Company, which insured the Beverly Oil Syndicate. The Ocean Company gave notice of appeal within 20 days from the date of the award and filed suit in the district court within 20 days after such notice, but the Maryland Casualty Company failed to give notice of appeal. The question before the court was stated thus:

"The award in this case being against the two insurers jointly and severally, under the facts above stated, did the appeal by the Ocean Accident & Guarantee Corporation, Limited, operate to set aside said award or suspend same in its entirety as to all parties?"

It was held that it did, since trials in the district court in such cases are required to be de novo, are similar in effect to appeals from judgments of justices of the peace to the county court, and that such appeals from the justice court annul its judgment as to all of the parties. The authorities cited by the court in support of its conclusions are cases where joint judgments were rendered in the justice court.

In the case of Moore v. Jordan, 65 Tex. 395, it is said:

"An appeal from a judgment by any party against whom it is rendered," annuls said judgment as to all said parties. "This is believed to be the rule in all cases of joint judgments where, on appeal, the trial is de novo."

It is to be noted, however, that the subject which was discussed is appeals from the justice court to the county court and which are governed by the following statute, to wit:

"When such bond has been filed with the justice, the appeal shall be held to be thereby perfected and all parties to said suit or to any suit so appealed shall make their appearance at the next term of court to which said case has been appealed without further notice." Rev. St. 1925, art. 2456.

There is no similar provision in the Workmen's Compensation Law relating to appeals, and we think the Baker Case distin-

guishable from the one before us. The award of the Accident Board was not joint. It was distinctly against the Southern Casualty Company and as distinctly in favor of the Century Indemnity Company.

■ Nothing in the pleadings of any of the parties show that the engagements of the two insurance companies sued were joint or that their affairs and business were intermingled, or that the acts of one were in any measure dependent on the act of the other, and we can but think that if the appellee Fulkerson desired to have the award in favor of the Century Indemnity Company set aside to the end that he might litigate his case between it and himself in the district court, he should have given the notice as required by the statute. It has long been the practice of courts on appeals of one of several persons against whom a judgment has been rendered to decline to disturb the judgment of the court below as to those not appealing, where the interests of the defendants in the judgment are several and not joined or dependent one upon the other. See, Hamilton & Co. v. Prescott, 73 Tex. 565, 11 S. W. 548; Ferguson v. Dickinson (Tex. Civ. App.) 138 S. W. 221, and cases therein cited.

We accordingly conclude that the demurrer of the Century Indemnity Company to the cross-action of appellee should have been sustained, and that the court erred in refusing to instruct the jury in favor of that company as requested.

We will now consider the appeal of the Southern Casualty Company.

Under this appellant's first, second, and third propositions it is insisted that the court erred in entering judgment in favor of the appellee Fulkerson against the Southern Casualty Company in the sum of $5,618.49, covering compensation at the rate of $16.62 per week for 400 weeks from and after May 24, 1928. As appears from our statement of the case, in answer to special issues 1, 2, 3, and 4, the jury found in appellee's favor the essentials for recovery for "hernia" resulting from injury sustained in the course of his employment, as prescribed in section 12b of article 8306 of the Workmen's Compensation Law. The jury further found in answer to special issues 6 and 7 that Fulkerson had been totally disabled to perform labor on account of his injury and that such disability was permanent. They further found the circumstances existed which authorized the lump-sum settlement which the court awarded. The evidence is undoubtedly sufficient to sustain the verdict of the jury that Fulkerson's injury resulted in a "hernia" for which an operation was performed on him, and that death did not result. He alleged that the operation was unsuccessful, but did not allege in what respect it was unsuccessful. Nor did he allege that the operation had been negligently or unskillfully performed, as a result of which injuries other than hernia had resulted which caused the pain and inability to labor of which he complained. By reference to that part of said section 12b, heretofore quoted in our opinion, it will be observed that the act provides that if an operation for hernia is successful, which is to be determined by the Board or court, he is only entitled, in addition to the surgical benefits provided for, to compensation for 26 weeks from the date of the operation. If such operation is not successful and does not result in death, he then shall be paid compensation under the general provisions of the law the same as if such operation had not been had. In other words, before resort may be made to the general provisions of the Workmen's Compensation Law, it must affirmatively appear that the operation for hernia was not successful.

In this case the general provisions of the Workmen's Compensation Law were undoubtedly applied on the assumption that the operation was unsuccessful, for he was given compensation in a lump sum not to exceed 400 weeks, which plainly would not have been authorized had his operation been successful.

Mr. Webster defines "hernia" as "a protrusion consisting of an organ or part projecting through some natural or accidental opening in the walls of its natural cavity; as, hernia of the brain, of the lung, or of the bowels. Hernia of the abdominal viscera is most common. Called also rupture."

■ There was a very decided conflict in the evidence as to whether the operation performed on Fulkerson for hernia was successful, Fulkerson and Dr. Woodward claiming that the operation was not successful, and Drs. Harris and Barrier, testifying in behalf of appellant, claiming that the operation was successful. In view of this condition of the evidence and the requirements of the law to which we have referred, it was certainly important, and as we think necessary, that the issue should have been submitted to and determined by the jury. This issue was not submitted, nor even requested by either of the parties. It may be said that under the operation of article 2190, of the Rev. Civ. Statutes of 1925, issues not submitted and not requested shall be deemed to be found by the court in such manner as to support the judgment when there is evidence to sustain such finding. But in the case of Ormsby v. Ratcliffe, 117 Tex. 242, 1 S.W.(2d) 1084, our Supreme Court distinctly holds that this rule does not apply to issues in the case which are independent causes of action in themselves or controlling and independent grounds of defense. Another statute, article 2184, provides that in submitting special issues, the court shall submit "the issues of fact to the jury." It was certainly important in rendering judgment for the court to be in-

formed as to whether the operation was successful or unsuccessful. If successful, appellee was entitled to compensation for 26 weeks only and not entitled to a lump-sum settlement. this being authorized only when the right of appellee was measured by the general provisions of the law. The necessity of submitting the issue under consideration is emphasized, we think, by the state of the evidence relating to the subject of hernia. The evidence upon which appellee apparently relies to support his contention that he has been permanently incapacitated for labor is, not so much that the "hernia" remains, as that as a result of the hernia he suffers from a varicose condition of the spermatic cord or veins of the scrotum, accompanied by neuritis or inflammation of the nerve or nerves, and resulting in much pain, weakness, and an atrophied condition of his left testicle. One or more of the physicians in describing appellee's condition applied the terms "varicose," "varicocele," and "neuritis." These terms are thus defined:

"Varicose Definition. A dilated vein; irregularly swollen or enlarged, affected with, containing, or pertaining to, varices or varicosities; as, a varicose nerve fiber, vein ulcers."

"Varicocele. Definition. A dilated vein; a varicose enlargement of the veins of the spermatic cord or of the veins of the scrotum. It is more common on the left side and gives rise to the formation of a soft compressible tumor mass."

"Neuritis. Definition. Inflammation of the nerve or nerves."

In the interest of brevity, we shall not undertake to set out the testimony relating to the subject at length. It has been read, however, and we think it may be said that there is no necessary connection between hernia, as it is defined, and the varicose and neuritic condition of the veins of appellee's spermatic cord, atrophied testicle, and resulting weakness therefrom. There is evidence indicating that such a condition might result from a negligent and unskillful operation for "hernia," as, for instance, it would be possible in such an operation in closing the inner ring of the hernia to sever a nerve or blood vessel or leave a scar which would unduly press upon a nerve. But such a theory of recovery is not presented in appellee's petition. In illustration of what we have just said, we will very briefly set out some of the testimony of the physicians. Dr. E. O. Rushing testified, among other things, that in his opinion the cause of the atrophied or degenerated condition of appellee's left testicle was "a cutting off of the blood supply. I don't expect any improvement in that condition. As to what cut off that blood supply, the artery and cord to the testicle has been injured in some way. Whether it was due to operation or whether it was due to traumatic injury, one would be unable to say. The only statement that I can make positively is that the circulation to that part has gone. That is a result of some injury. After an operation for a hernia, it is possible that there may be too much contraction in the place where the operation took place. * * * Closing a ring too tight where it came through the abdomen, the inguinal ring, might cause it. Cutting the cord would cause it. I can't say whether his cord was cut or not."

Dr. Charles W. Barrier testified, among other things:

"Varicocele is a swelling of the veins. The varicocele was found at the time of the examination. My opinion is that the varicocele was not the effect of the hernia because varicoceles are usually a permanent structure that existed previous to and are not produced by trauma or injury. Varicocele in common with all other varicose veins are usually of congenital origin. They are born with them. I have no way of knowing how long that vein had been in that condition. There is no way I could tell. It was in that condition at the time. I would say in the usual case it is not the result of hernia. Hernias do not produce varicose veins. * * * That varicocele situation is certainly not the effect of the hernia operation because it was found before the operation, and it is my opinion it was not the effect of the production of the hernia. * * * I do not believe there is any connection between the accident and this varicocele."

Dr. Charles H. Harris testified, among other things, that he had been practicing as a doctor for thirty years; had graduated in the medical school in due form in the year 1899; that he was the head of the Harris Clinic Hospital and had operated on something over a thousand hernia cases and had operated on the plaintiff Fulkerson, describing the manner in which the operation had been performed, and found a varicocele condition in Fulkerson before the operation. "This man (referring to appellee) has a neuritis, with an atrophied testicle, and I think his atrophy is due to his nerve disturbance in the testicle."

In Ellis v. United States Fidelity & Guaranty Co. (Tex. Civ. App.) 6 S.W.(2d) 811, 812, it was said:

"Furthermore, hernia is a specific injury under the statute (article 8306, § 12b), with elaborate provisions for its compensation under varied circumstances. In order for an employee who has suffered an injury resulting in hernia to be entitled to compensation under the general provisions of the law, he must plead and prove the facts under the provisions of said article entitling him to same. Plaintiff presented no such pleading or proof,

but to the contrary it plainly appears that such conditions did not exist."

We conclude that the assignments of the appellant Southern Casualty Company just discussed must be sustained and the judgment below as to this appellant reversed.

■ In remanding this case for a new trial, as we think we should do, we wish to say that we do not approve that part of the closing argument in behalf of the appellee which reads as follows:

"Oh, how these insurance companies hate the human heart. They want to get out of this case the flesh and blood that is in it, and I am not going to let them do it and you gentlemen are not going to let them do it."

■ The reference to appellee's wife, children, debts, inability to labor, etc., was relevant to the issue of a lump-sum settlement, and other arguments criticized will probably not arise on another trial.

We should also perhaps notice the further fact that the appellant companies have presented a motion to reverse and remand the case upon verified affidavits to the effect that since the jurisdiction of this court attached, the appellee Fulkerson, as a result of the personal injuries received on May 24, 1928, died, and the prayer is that the case be reversed with instructions to the lower court to permit the administrator of the estate of Fulkerson, deceased, to intervene, etc. We think, however, that we need not discuss the question of our power to entertain or determine the questions presented by the motion in view of our conclusions already announced that the judgment in favor of the appellee must be reversed.

It is accordingly ordered that the judgment of the trial court as against the Century Indemnity Company be reversed and here rendered; that that company be wholly discharged with its costs in both the trial court and in this court, costs to be taxed against appellant casualty company and appellee J. C. Fulkerson. It is further ordered that the judgment in favor of appellee against the Southern Casualty Company be reversed, and the cause remanded for such further proceedings as the facts and law shall require, and that costs of the appeal shall be taxed against the appellee.

## On Motion for Rehearing.

The appellant casualty company presents an insistent motion for rehearing. The substance of its contention is that notice given by it of its want of consent to abide by the final ruling and decision of the Industrial Accident Board, together with its subsequent institution of suit in the proper court, coupled with the appearance and answer of appellee Fulkerson, brought before the court all parties to the litigation, including the Century Indemnity Company, by virtue of section 5, of article 8307 of the Workmen's Compensation Law and provided that the trial in the court to which the case is taken shall be de novo. We quote so much of that section as we think pertinent to the present discussion, towit:

"All questions arising under this law, if not settled by agreement of the parties interested therein and within the provisions of this law, shall, except as otherwise provided, be determined by the board. Any interested party who is not willing and does not consent to abide by the final ruling and decision of said board shall within twenty days after the rendition of said final ruling and decision by said board give notice to the adverse party and to the board that he will not abide by said final ruling and decision. And he shall within twenty days after giving such notice bring suit in the county where the injury occurred to set aside said final ruling and decision and said board shall proceed no further toward the adjustment of such claim, other than as hereinafter provided. Whenever such suit is brought, the rights and liability of the parties thereto shall be determined by the provisions of this law and the suit of the injured employee or person suing on account of the death of such employee shall be against the association if the employer of such injured or deceased employee at the time of such injury or death was a subscriber as defined in this law. If the final order of the board is against the association, then the association and not the employer shall bring suit to set aside said final ruling and decision of the board, if it so desires, and the court shall in either event determine the issues in such cause instead of the board upon trial de novo and the burden of proof shall be upon the party claiming compensation. In case of recovery the same shall not exceed the maximum compensation allowed under the provisions of this law. If any party to any such final ruling and decision of the board, after having given notice as above provided, fails within said twenty days to institute and prosecute a suit to set the same aside, then said final ruling and decision shall be binding upon all parties thereto, and, if the same is against the association, it shall at once comply with such final ruling and decision, and failing to do so the board shall certify that fact to the Commissioner of Insurance and such certificate shall be sufficient cause to justify said Commissioner to revoke or forfeit the license or permit of such association to do business in Texas."

We are not inclined to adopt the construction that the regulation which requires a de novo trial brings before the court a contestant before the board who has not been given the notice required. In the case of Mingus, Receiver, v. Wadley, 115 Tex. 551, 285 S. W. 1084, 1087, it is said, in an opinion by Chief

Justice Cureton, that the rights to be enforced under the Workmen's Compensation Law and all the remedies provided therefor are purely statutory as distinguished from the common-law rights and remedies, and that:

"The Workmen's Compensation Act having created the rights to be enforced and provided the remedy therefor, each step in the progress of the maturity of a claim from the time of the injury to its final adjudication is a mandatory requirement, necessary to the exercise of jurisdiction by the first and succeeding statutory agencies."

Numerous authorities are cited in support of the conclusion so stated, and this opinion has been followed several times since, particularily in the case of Texas Indemnity Co. v. Holloway, 30 S.W.(2d) 921, opinion by Mr. Justice Dunklin of this court on rehearing, handed down June 21, 1930.

The "jurisdiction" of a court is the power to hear and determine; the "trial" is the procedure to be observed in arriving at the determination. The procedure necessary to confer jurisdiction is altogether separate and distinct from that to be observed in the trial. It seems evident that the terms invoked are not to be given the literal construction apparently contended for. The functions of the board are quasi judicial only, and its proceedings are informal. No rules of procedure are prescribed. No jury is provided for, and the members in making their awards evidently proceed and act in their own way, free of technical rules. We think that in providing that upon appeal from an award the trial in the court shall be de novo, it was merely intended to indicate that the trial court should be unaffected by the proceedings or award of the board. It certainly could not have been intended that the case must appear and proceed with precisely the same parties and upon the same issues, and tried in the same way as by the board. However, we need not further discuss this subject, for, regardless of the proper construction to be given the provision that upon appeal the trial shall be de novo, there are other reasons why we think appellant's motion for rehearing should be overruled.

The appellant casualty company presents a further contention that by reason of the alleged error of this court in dismissing the Century Indemnity Company the casualty company has been denied to its prejudice a right of contribution from the Century Company. It is undisputed that if the Century Company is bound as an insurer at all, which it denies, it is by virtue of an obligation entirely distinct from that of the casualty company, and in a reply of the Century Company to the motion for rehearing it is urged that under the circumstances no right of contribution exists; this contention being supported by argument and citation of authorities. But we do not find it necessary to discuss this question, for, as pointed out in our original opinion, the petition of the casualty company wholly fails to set up any facts which in any event would entitle it to contribution from the Century Company, and wholly fails to pray for any such relief in the trial court. In addition to this, it is said in 9 Cyc. p. 795, that:

"As a general rule the discharge or release of the direct liability of one coobligor to the obligee will not avail him as a discharge from his liability for contribution to the other coobligors unless the discharge be of a character to release the others also."

In Hoxie v. F. & M. National Bank of Fort Worth, 20 Tex. Civ. App. 462, 49 S. W. 637, by this court, writ of error refused, it was said, quoting from the headnotes:

"A judgment against one defendant only in an action against several liable as partners, or otherwise jointly and severally liable, does not preclude him from compelling contribution on paying the judgment."

In no event will the casualty company be entitled to contribution from the Century Indemnity Company until the former shall have paid all or a part of a judgment against it, and we do not think that we should reverse our former ruling relating to this subject and remand the case as to the Century Indemnity Company in order that the casualty company may have an opportunity to amend its pleadings and present the issue of contribution insisted upon.

But regardless of what we have heretofore said, upon a re-examination of plaintiff's original petition upon which the trial proceeded, we find that the jurisdictional facts alleged are that:

"The defendant, Century Indemnity Company, is a corporation with an office in the City of Dallas, Dallas County, Texas, with A. P. Cunningham as its agent, on whom service of citation may be had.

"That heretofore, towit, on the 17th day of October, A. D. 1928, the Industrial Accident Board of the State of Texas made its final award in that certain cause styled J. A. Fulkerson, Employee vs. Dallas Transportation Company, Employer, Southern Casualty Company, insurer, &/or Century Indemnity Company, Insurer; a copy of said award is hereto attached and marked "Exhibit A" for jurisdictional purposes only.

"That said award was a final award of the Industrial Accident Board of the State of Texas."

The exhibit of the award attached to the petition shows that the award was entered on the 17th day of October, 1928, and recites:

"That this claim for compensation was set against the Southern Casualty Company and

Century Indemnity Company, and upon a consideration of the evidence submitted it is the opinion of the Board and it finds that said Century Indemnity Company is entitled to be acquitted and discharged from all liability herein for the reason that said Dallas Transportation Company was a subscriber of the Southern Casualty Company and therefore claim for compensation against the Century Indemnity Company must be and the same is hereby denied and refused and said Century Indemnity Company must be and is hereby fully and finally acquitted and discharged from all liability on account of said claim, and it is so ordered, adjudged and decreed by the said Board."

The petition further alleged:

"That this plaintiff did on the 31st day of October, A. D. 1928, the same being within twenty days from the date of said award mentioned, give notice to the Industrial Accident Board of the State of Texas that it was not willing to and would not abide by said final award, decision and ruling of the said Board, and that it would within twenty days from the service of said notice file suit in some court of competent jurisdiction in the county where the said J. A. Fulkerson was injured for the purpose of having said award set aside, annulled and held for naught, and for trial de novo of this cause in the court.

"That this plaintiff does now within twenty days from the date of service of said notice on the Industrial Accident Board, and on towit, the 17th day of November, A. D. 1928, filed this suit in this court for the purposes above mentioned."

These allegations are then followed by a prayer to the effect that defendants be cited to appear and answer herein and plead and prove their cause of action, if any they have and that upon trial hereof, this plaintiff have judgment declaring said award of the Industrial Accident Board of no force and effect, and that this plaintiff go hence without day and recover its costs.

By again referring to section 5 of article 8307, hereinbefore quoted, it will be observed that the notice of an interested party of his unwillingness to abide by the final ruling and decision of the Accident Board must be "to the adverse party and to the Board." Reading these words in the light of Judge Cureton's opinion from which we have quoted, the casualty company's pleading nowhere stated the essential jurisdictional fact that notice of its disagreement with the ruling of the Accident Board was given to either of the adverse parties. The notice given, as alleged, was to the Accident Board only, so that we can but think the petition was fatally defective, as we originally held, in the averments necessary to confer jurisdiction of the district

court over the Century Indemnity Company. Indeed, the averments alone brought neither the Century Indemnity Company nor Fulkerson before the court. But Fulkerson having appeared and asked the court for affirmative relief, it may be said that the requirement referred to is in the nature of an original citation in an ordinary suit, and Fulkerson not having objected and having appeared and invoked the jurisdiction of the court, he waived the notice required by the statute.

Without further discussion, we conclude that the motion for rehearing made in behalf of the Southern Casualty Company should be overruled.

BUCK, J.

While I do not agree with that part of Judge CONNER'S opinion as to what a trial de novo means, yet I do agree with the conclusion stated by Judge CONNER that for lack of pleading, the Southern Casualty Company is not entitled to contribution, if it should be under appropriate plea.

### Addendum.

CONNER, C. J.

Since handing down our opinion on the motion of the casualty company in this case, our attention has been called to an act of the Legislature approved March 30, 1927, which undertakes to so amend section 5 of article 8307, Rev. Statutes of 1925, as to repeal the requirement to give notice to the "adverse party," as well as to the Board, in order to give jurisdiction to the court in which suit is filed to set an award aside. See General Laws of the 40th Legislature at its Regular Session, page 328, c. 223, § 1 (Vernon's Ann. Civ. St. art. 8307, § 5).

We are now in the closing hours preceding our summer vacation, already fixed, with a number of important cases and questions pressing for disposition, and we will not, therefore, stop to consider and determine whether, as against the Century Association, the enforcement of the amendment would be violative of "due process of law" provisions of our state and federal Constitutions, for we are all agreed that regardless of all other questions discussed in our opinion on rehearing, the pleadings of the appellant casualty company wholly fail to show any cause of action against the Century Association. The error, therefore, if any, occasioned by overlooking the amendment referred to is immaterial, in so far as the right of the appellant casualty company is involved, and hence insufficient to require us to reverse our conclusion that the motions for rehearing should be overruled.