R. E. MORROW v. W. BOYD CORBIN.

No. 6542. Decided June 24, 1933.
(62 S. W., 2d Series, 641.)

554

*B. R. Wall,* of Fort Worth, for plaintiff.

*M. Hendricks Brown,* of Fort Worth, for defendant.

MR. CHIEF JUSTICE CURETON delivered the opinion of the court.

On May 26, 1933, a certificate issued by the Honorable Walter L. Morris, Judge of the 67th Judicial District was filed in the Court of Civil Appeals for the Second (Fort Worth) District. The purpose of the certificate was the determination of the constitutionality of the amendment to Article 2218-B, Revised Statutes, 1925, as made by an Act of the 43rd Legislature (page 225), effective on May 1, 1933, providing for the judicial stay of foreclosure of liens.

The certificate discloses that the suit out of which it was issued is one for debt and foreclosure of a vendor's lien filed on November 22, 1932, long prior to the enactment of the judicial stay act. On May 13, 1933, the defendant answered by an application for an extension of time for the foreclosure of the lien as provided for in the act above named. The application for such extension is in due form and meets the requirements of the statute invoked. In opposition to the application the

plaintiff asserted that the statute involved violates both Federal and State Constitutions.

Before trial and judgment in the District Court Judge Morris certified the question of the constitutionality of the Act to the Court of Civil Appeals.

The certificate and certified copy of the pleadings in the District Court accompanying it shows that the parties agreed that the District Judge should issue the certificate under the provisions of the Legislative Act copied below.

On May 30, 1933, the Court of Civil Appeals certified the questions contained in the certificate to this Court and the record is now before us on preliminary examination under Rule 17, Rules of the Supreme Court, which provides:

"When a certified question from a Court of Civil Appeals is presented to the clerk of this court, he will file and docket it and send it at once to the consultation room. If the court should determine that the question is not properly certified under the statute, so as to give jurisdiction to answer it, it will be dismissed without a hearing. Otherwise, it will be set down for argument on a day to be fixed by the court in regular session." (Smoot's Texas Court Rules, p. 54).

■ We have concluded that we have no jurisdiction of the certificate and that the cause should be dismissed in accordance with the rule.

The certificate is presented under Senate Bill No. 173 recently enacted by the Legislature.

The several sections of this measure in so far involved in the case before us, read as follows:

"SECTION 1. In any case hereafter pending in any District or County Court in this State, wherein the constitutionality of any law or any order, rule or regulation of any officer, board, or other State Commission is attacked as being violative of either the State or Federal Constitution, and wherein a decision on the same is material to the deciding of said case finally on its merits, the Judge of said Court shall have the power and authority to certify any such question or questions of law involved in said case directly to the Court of Civil Appeals in said District before trial on the merits for its decision.

"SEC. 2. The trial court, in certifying such question or questions, may incorporate in such certificate any or all of the pleadings of the parties therein, and in the event all of the pleadings are not set forth therein, then upon the certification of such question either party may have the right to file in the

Court of Civil Appeals or the Supreme Court a certified copy of any such pleadings for the consideration of the Court.

"SEC. 3. In order to expedite the final determination of such questions with dispatch, the Court of Civil Appeals may forthwith certify said question or questions immediately to the Supreme Court, as provided by Article 1758 of the Revised Civil Statutes of 1925, and other Articles relating to certifying questions to the Supreme Court. When the Supreme Court, on receiving such record, shall render an opinion thereon, such opinion shall be final and shall be the law on the question involved until overruled by it, or otherwise abrogated by law. After the questions are decided the Supreme Court and the Court of Civil Appeals shall notify the Court of Civil Appeals and the trial court respectively. Either of said Appellate Courts shall give such time as it may deem advisable for the filing of briefs.

"SEC. 4. The trial court may hold the trial of said case in abeyance until its questions have been certified and answered. * * *

"SEC. 5. All such appeals and certified questions shall be given precedence over all other cases as now provided by law. The law and the rules of the various courts in reference to certifying questions by the Court of Civil Appeals to the Supreme Court and taking appeals from orders granting or denying temporary injunctions shall govern and control where not in conflict with the provisions hereof.

"SEC. 5a. This Act shall not apply to any cause pending on the effective date hereof unless the parties each and all agree in writing to the certification to the Appellate Court and the agreement approved by the trial judge."

It is obvious that the purpose of this Act is to obtain *before judgment in the trial court* the advice of the Court of Civil Appeals and the Supreme Court as to *"the constitutionality of any law or any order, rule or regulation of any officer, board or other State Commission,"* which may be involved in any case pending but undetermined in a trial court. In other words, by the terms of this enactment in so far as involved in the case before us we are required to advise the district and county judges how to try their cases as to all constitutional questions, not to revise, reverse, affirm, or otherwise affect their decrees. Ordinarily, we believe the rendition of advisory opinions is to be regarded as the exercise of *executive* rather than *judicial* power. This seems to have been the conception of those who framed the Constitution, since by that instrument the Attorney

General, a member of the Executive Department, is the only state officer expressly authorized to render such opinions. State Constitution, art. 4, secs. 1, 22. At any rate, the rendition of advisory opinions has generally been held not to be the exercise of *judicial power*. 7 Harvard Law Review, p. 153; In the Matter of State Industrial Commission, 224 N. Y., 13; Laughlin v. Portland, 111 Me., 486, 51 L. R. A. (new series) 1143, 90 Atl., 318; Opinion of the Justices, 126 Mass., 567; Anway v. Grand Rapids, 211 Mich., 592, 12 A. L. R., 26, 179 N. W., 350 (overruled in the later case, Washington-Detroit Theatre Co. v. Moore, 249 Mich., 673, 68 A. L. R., 105, 229 N. W., 618, but not on the above question); 15 Corpus Juris, p. 785, secs. 78, 79, and authorities cited in the notes; authorities *post*. We shall inquire, however, whether or not such power may be exercised by the Appellate Courts of this State, either as an express grant under the Constitution or as incidental to any granted power.

Section 1, Article 5, of the Constitution states in what *"magistracy"* the judicial power shall be vested. It declares "the judicial power of this State shall be vested in one Supreme Court, in Courts of Civil Appeals, in the Court of Criminal Appeals, in district courts, in county courts, in commissioners courts, in courts of justices of the peace, and in such other courts as may be provided by law." The Constitution has thus erected a system of trial and appellate courts quite similar to that of the United States and those of the American states generally, all of which are an outgrowth of the judicial system of England, out of which the common law grew and attained its renown.

■ Judicial power is the power of a court to decide and pronounce a judgment and carry it into effect between persons and parties who bring a case before it for a decision. Muskrat v. United States, 219 U. S., 346; Liberty Warehouse Co. v. Grannis, 273 U. S., 70; 11 Texas Jurisprudence, pp. 711, 712, sec. 9, and cases cited in the notes.

■■ Jurisdiction of a particular court is that portion of the judicial power which it has been authorized to exercise by the Constitution or by valid statutes.

Since the Constitution has erected a system of both trial and appellate courts it is obvious that it was never the purpose of the organic law to permit one tribunal to interfere with the lawful exercise by another of the judicial power allocated to it. It was the purpose of the framers of the Constitution to make

each tribunal independent of all others in the exercise of the authority confided to it, except in so far as powers of revision or direction may be given in the organic law or valid statutes thereunder to appellate over trial tribunals. This is made plain by the repeated decisions of the appellate courts in mandamus cases to the effect that while they have power to direct a trial court to proceed to trial, they have no authority to and will not direct the inferior tribunal how to try or decide a case before it. Ewing v. Cohen, 63 Texas, 482; Aycock v. Clark, 94 Texas, 375; Matthaei v. Clark, 110 Texas, 114, 127, 216 S. W., 856; Matlock v. Smith, 96 Texas, 211, 71 S. W., 956; Roberts v. Munroe (Civ. App.), 193 S. W., 734; Pollard v. Speer (Civ. App.), 207 S. W., 620.

The Constitution is specific in confiding trial jurisdiction to the District and County Courts, and other inferior courts. State Constitution, art. 5, secs. 8, 16, 19. These provisions mean that those courts are to exercise that portion of the judicial power allocated to them unimpeded by the supervision of any other tribunal, except in so far as powers of revision may be confided to other tribunals. The jurisdiction of these trial or inferior courts, without any exception, embraces the *"power to hear and determine the matter in controversy according to established rules of law, and to carry the sentence or judgment of the court into execution."* 11 Texas Jurisprudence, p. 711, sec. 9; Cleveland v. Ward, 116 Texas, 1, 285 S. W., 1063. Writing with reference to the subject the first authority cited declares:

"Jurisdiction has been broadly defined as the power to hear and determine; to adjudicate concerning the subject matter in a given case; to litigate the controversy between the parties as that controversy is alleged in the petition. Again, jurisdiction is stated to be the authority by which judicial officers take cognizance of and decide causes, *and this includes the power to determine the legal results to follow from the facts pleaded and proven.* Yet again, it is said that 'jurisdiction is power to hear and determine the matter in controversy according to established rules of law, and to carry the sentence or judgment of the court into execution.' Jurisdiction, it is agreed, includes the power to determine either rightfully or wrongfully. It can make no difference how erroneous the decision may be." (Italics ours).

The text quoted cites and is supported by the following authorities: Stewart v. Anderson, 70 Texas, 588, 8 S. W., 295, 299; Texas Employers' Ins. Assn. v. Ezell (Com. App.), 14

S. W. (2d) 1018, reversing 5 S. W. (2d) 594; Southern Casualty Co. v. Fulkerson (Civ. App.), 30 S. W. (2d) 911; Yount v. Fagin (Civ. App.), 244 S. W., 1036, 1040; Brownsville v. Basse, 43 Texas, 440, 449; Ex parte McKenzie, 115 Texas Crim. Rep., 315, 29 S. W. (2d) 771; Ex parte Armstrong, 110 Texas Crim. Rep., 362, 8 S. W. (2d) 674; Farmers' Natl. Bank v. Daggett (Com. App.), 2 S. W. (2d) 834, affirming 259 S. W., 198, per Short, P. J.; Texas Employers' Ins. Assn. v. Evans, 117 Texas, 113, 298 S. W., 516, 518; Menard v. MacDonald, 52 Texas Civ. App., 627, 115 S. W., 63, 65, writ of error refused; Cleveland v. Ward, 116 Texas, 1, 285 S. W., 1063, per Cureton, C. J.; Scott v. Hunt, 92 Texas, 389, 49 S. W., 210. The text and authorities clearly show that *"jurisdiction"* not only embraces the power to *hear* but includes as well the authority to *enter a judgment, and to carry that judgment into execution. Moreover it includes the power to decide as to the law of the case as well as the effect of the facts in issue.* The Texas authorities are consistent with the general rule. 15 Corpus Juris, p. 723, sec. 13. The rules of law stated above apply with equal force to all judicial tribunals, trial and appellate.

■ We should, of course, interpret and construe the various sections of the Constitution defining the jurisdiction of our several courts in such manner as to harmonize them, to the end that each court, whether trial or appellate, shall be permitted to exercise the power conferred upon it without conflict with the authority confided to another tribunal. 12 Corpus Juris, 707, sec. 55; 6 Ruling Case Law, p. 47, sec. 41; Willis v. Owen, 43 Texas, 55; Gordon v. State, 43 Texas, 339; Mellinger v. City of Houston, 68 Texas, 44, 3 S. W., 249; Parks v. West, 102 Texas, 16, 111 S. W., 726; San Antonio v. Toepperwein, 104 Texas, 43, 133 S. W., 416.

■ One Court of Civil Appeals or District Court will not be permitted to interfere with the previously attached jurisdiction of another court of co-ordinate power, nor can an appellate court interfere with the jurisdiction of a District Court, except upon appeal in the usual way. Cleveland v. Ward, 116 Texas, 1. Briefly stated, what we here intend to say is that the jurisdiction of trial courts, under the Constitution, once it attaches, embraces every element of judicial power allocated to those tribunals, and includes (1) *the power to hear the facts,* (2) *the power to decide the issues of fact made by the pleadings,* (3) *the power to decide the question of law involved,* (4) *the power to enter a judgment on the facts found in accordance with the*

*law as determined by the court,* (5) *and the power to execute the judgment or sentence.* These duties this Court will, by mandamus, require them to perform. Authorities *supra. And further: That with the right of the trial court to exercise the powers thus confided to it, no appellate court can interfere, except in accordance with the authority given in the Constitution or valid statutes thereunder.* Cleveland v. Ward, *supra.*

■ We are equally clear that the power thus confided to our trial courts must be exercised by them as a matter of non-delegable duty, that they can neither with nor without the consent of parties litigant delegate the decision of any question within their jurisdiction, once that jurisdiction has been lawfully invoked, to another agency or tribunal, and that any legislative act attempting to authorize such a delegation of authority is inconsistent with those provisions of the Constitution which confer jurisdiction on the trial tribunals. 1 Bacon's Abridgment, 620; 12 Corpus Juris, p. 897, sec. 400, and authorities in the notes; State v. Noble, 118 Ind., 350, 21 N. E., 244, 10 Am. St. Rep., 143, 4 L. R. A., 101; Reybold v. Dodd, 1 Harr. (Del.), 401, 26 Am. Dec., 401; Moore v. Fannin, 104 S. W. (I. T.), 842; Logan v. Stephens Co., 98 Texas, 283, 83 S. W., 365; Southern Oil Co. v. Wilson, 22 Texas Civ. App., 534, 56 S. W., 429; Brown v. Bay City Bk. & T. Co. (Civ. App.), 161 S. W., 23; 6 Ruling Case Law, p. 172, sec. 173.

We pass to a discussion of the Constitutional powers of the Courts of Civil Appeals and Supreme Court, which should be interpreted in a manner consistent with the jurisdictional powers and concomitant duties of our trial tribunals, as outlined above, if this can be done. Section 3, Article 5, of the State Constitution fixes the boundaries of the judicial power of the Supreme Court as follows:

"The Supreme Court shall have appellate jurisdiction only except as herein specified, which shall be co-extensive with the limits of the State. Its appellate jurisdiction shall extend to questions of law arising in cases of which the Courts of Civil Appeals have appellate jurisdiction under such restrictions and regulations as the Legislature may prescribe. Until otherwise provided by law the appellate jurisdiction of the Supreme Court shall extend to questions of law arising in the cases in the Courts of Civil Appeals in which the Judges of any Court of Civil Appeals may disagree, or where the several Courts of Civil Appeals may hold differently on the same question of law or where a statute of the State is held void. The Supreme Court and the Justices thereof shall have power to issue writs

of habeas corpus, as may be prescribed by law, and under such regulations as may be prescribed by law, the said courts and the Justices thereof may issue the writs of mandamus, procedendo, certiorari and such other writs, as may be necessary to enforce its jurisdiction. The Legislature may confer original jurisdiction on the Supreme Court to issue writs of quo warranto and mandamus in such cases as may be specified, except as against the Governor of the State."

■ An analysis of the vital portions of this Section shows that (a) *The Supreme Court has "appellate jurisdiction only"* (except where authorized to exercise original jurisdiction);

(b) This *"appellate jurisdiction only"* is limited in two particulars, viz:

(1) *"To questions of laws,"*

(2) *"Arising in cases of which the Courts of Civil Appeals have appellate jurisdiction."*

The jurisdictional provisions of the Constitution relating to Courts of Civil Appeals are found in Section 6 of Article 5 of the Constitution, and in so far as here involved read:

"Sec. 6. * * * Said Court of Civil Appeals shall have *appellate jurisdiction* co-extensive with the limits of their respective districts, which shall extend to all civil cases of which the District Courts or County Courts have original or appellate jurisdiction, under such restrictions and regulations as may be prescribed by law. Provided, that the decision of said courts shall be conclusive on all questions of fact brought before them on appeal or error. * * * Said Courts shall have such other jurisdiction, *original and appellate,* as may be prescribed by law." * * *

These provisions leave no room for doubt as to the types of jurisdiction which may be conferred upon Courts of Civil Appeals. They are (1) *"original"* and (2) *"appellate."* The italicized words in the quotations above definitely and conclusively settle this question.

We think the plain reading of the Constitution concludes the question that the Supreme Court and the Courts of Civil Appeals may exercise *only these two classes of jurisdiction.* Yett v. Cook, 115 Texas, 175, 180, 268 S. W., 715, 281 S. W., 843. Neither is given any advisory power by the organic law and since not given, under the rule *expressio unius est exclusio alterius* it is denied and can not be conferred by the Legislature. 15 Corpus Juris, p. 785, sec. 79; Madison's Journal of the Const. Conv. (Scott's ed.), pp. 558, 559; Marshall's Life of Washington, Chap. 6; Sparks's Life of Washington, vol. 10, pp. 359,

542; Thayer's Mem. Advisory Opinions, 13; Story on the Const. (5th ed.), sec. 1571; State v. Dike, 20 Minn., 363; Rice v. Austin, 18 Am. Rep., 330; In Re State Senate, 10 Minn., 78; State v. Baughman, 38 Ohio St., 455; Rogers v. Kennard, 54 Texas, 30; State v. Moore, 57 Texas, 307; Arnold v. Leonard, 114 Texas, 535, 540, 273 S. W., 799; 4 Michie's Digest, p. 395, sec. 10.

In Corpus Juris the text (Sec. 79 *supra*), in part, declares:

"In the American colonies, the rendition of advisory opinions was occasionally practiced; but an attempt made at the framing of the federal constitution to incorporate therein a provision perpetuating the practice was unsuccessful, and although no contrary provision was adopted, nor even the distributive clause which appears in so many state constitutions, advisory opinion have never been given under the federal system. A refusal by the judges of the supreme court to comply with a request by President Washington for a construction of the treaty with France appears to have settled the point for that jurisdiction.

"In the states the familiar constitutional clause which requires the separation of governmental powers has been held impliedly to prohibit the rendition of advisory opinions, and the attitude of the judiciary has generally been unfavorable to the practice." * * *

Since advisory jurisdiction generally is not given under the Constitution and can not be conferred by the Legislature, and since that authorized by the Act before us is not original jurisdiction, it is obvious that if the enactment under which the certificate is before us is to stand the jurisdiction provided for must be found to be within the appellate powers of the Supreme Court and the Courts of Civil Appeals, either as an express grant or incidental to the exercise of the authority granted. The power to determine the constitutionality of a statute or order, etc., is certainly within the appellate power of the revisory courts, but this power can only be invoked in a case within their appellate jurisdiction (or in a case within their original jurisdiction), and in the manner and under conditions contemplated by the Constitution. The question then is when may the appellate jurisdiction of the Supreme Court and of the Courts of Civil Appeals be invoked. The rule in Texas, with exceptions to be hereafter noted, has always been that appellate jurisdiction may be invoked only after trial.

A leading authority declares:

"*Appellate jurisdiction is the power and authority conferred*

*upon a superior court to rehear and determine—that is to re-view—causes which have been tried in inferior courts.* It has been observed that this jurisdiction may not be exercised before there has been a decision by the tribunal from which the cause comes for review." 3 Texas Jurisprudence, p. 65, sec. 22, and cases cited in the notes. (Italics ours).

■ Not only must there be a trial in the inferior court, but the trial must result in a *final judgment disposing of all issues and parties before appellate jurisdiction may attach.* 3 Texas Jurisprudence, p. 105, sec. 53, and authorities cited in the notes.

■ These rules have been stated and adhered to by the courts without any special discussion of the Constitution, but from a consideration of the statutes then existing. However, a proper interpretation of the Constitution leads us to the same conclusion. The Constitution does not in so many words say that appeals lie only from final judgments, but it does erect a system of trial and appellate courts and gives the latter (aside from their original jurisdiction) only appellate power. The Constitution is to be interpreted in the light of the common law, which has been the rule of decisions with us since 1840. The common law limits and determines the meaning of words and phrases used in the Constitution when the context or some other provision of the instrument or some previous enactment existing when the organic law was framed does not determine them. 12 Corpus Juris, p. 718, sec. 71; Hewitt v. State, 25 Texas, 722, 727; Gordon v. State, 43 Texas, 330, 340; Henderson v. Beaton, 52 Texas, 29, 60 (dissenting opinion); Ex parte King, 35 Texas, 658.

When the Constitution declares that our appellate courts shall have and exercise *original* and *appellate* jurisdiction, it means those types of *original* and *appellate* jurisdiction which from time immemorial the common law courts have exercised. Beyond the limits of original and appellate power as comprehended by the common law the Legislature is without constitutional authority to confer jurisdiction, except in so far as the common law has been abrogated or modified directly or by necessary implication by the Constitution itself. Harrell v. Lynch, 65 Texas, 146, 150; Ex parte Towles, 48 Texas, 413, 414; Ex parte Ginnochio, 30 Texas Crim. Rep., 584, 18 S. W., 82; Gibson v. Templeton, 62 Texas, 555; In Re House Bill 537, 113 Texas, 367; Ex parte Whitlow, 59 Texas, 273; O'Brien v. Dunn, 5 Texas, 570.

■ Under the common law in the *law courts of England* appel-

late jurisdiction could only be invoked after final judgment in the trial court. True, appeals could be taken before the judgment had been signed in order that writ of error might have the effect of a supersedeas, but an appeal could not be taken until after trial and judgment. McLish v. Roff, 141 U. S., 661-665; Bacon's Abridgment (ed. of 1854), vol. 3, pp. 325, 341, 357; Tidd's Practice (Third American Edition), col. 2, pp. 1140, 1162; Jacob's Law Dictionary ( 3rd Ed. of 1736), subject "Error," col. 3. In the great common law authority last cited the distinguished author, writing in 1736, declared:

"Writ of *Error* cannot be brought on any Record which is not a Judgment. 1 *Salk.* 145. And *Error* lies not on an interlocutory judgment; it must be a final Judgment after Verdict, &c. A Writ of *Error* may not be brought to reverse a Judgment by Default, before a Writ of Inquiry of Damages issues and is executed, that the Verdict of the Jury and interlocutory judgment may be made a perfect final Judgment, upon which alone a Writ of *Error* must be brought. 1 Lill. 522."

The common law rule as to the necessity of final judgments before appeal has become generally the rule throughout the United States. 3 Corpus Juris, p. 432, sec. 256. Interpreting our Constitution in the *light of the common law* as just stated it is obvious that the jurisdictional sections quoted above mean that the appellate jurisdiction of the Supreme Court and that of the Courts of Civil Appeals can only be invoked after trial and final judgment in the trial courts.

█ That the rendition of an advisory opinion such as is called for by the certificate before us is not within the appellate power of our revisory courts, and that jurisdiction of the Supreme Court can only be invoked after trial and final judgment in an inferior court, has long been settled by the opinions of this Court. The Supreme Court of the Republic of Texas had before it a statute quite similar in purpose and effect to that before us in the instant case, and in two cases interpreted the Constitution of the Republic, which was similar in its terms to those of the present Constitution, in the same way that we have here construed our existing organic law. In defining the jurisdiction of the courts erected by it, the Constitution of the Republic declared:

"Sec. 1. The judicial powers of the government shall be vested in one supreme court, and such inferior courts as the congress may, from time to time, ordain and establish. * * * * * * *

"Sec. 8. The supreme court shall have appellate jurisdic-

tion only, which shall be conclusive, within the limits of the republic. * * * Sections 1 and 8, Article 4, of the Constitution of the Republic. 1 Gammel's Laws, pp. 1073; 1074.

In the Judiciary Act of 1836 "establishing the jurisdiction and powers of the district courts," approved by President Houston on December 22, 1836, the Congress of the Republic in Section 43 declared:

"Sec. 43. * * * *the judge of any district court may at his discretion, in any criminal case, reserve a question of law, which to him may appear novel or difficult, for the consideration and discretion of the supreme court at the next succeeding term, and the supreme court shall pronounce such sentence or judgment as the district court ought to have pronounced.*" (Italics ours). 1 Gammel's Laws, 1270.

The case of Republic v. Laughlin, Dallam's Decisions, 412, came before the Supreme Court under this statute *after trial and verdict but before judgment,* and the Court declined to take jurisdiction, saying:

"Before we are permitted to decide the several points made in this case, we feel it to be our duty first to dispose of a preliminary question; and that is, 'whether the record and proceedings before us make out a proper case for the interposition and decision of this court.'

"The constitution of this republic, in directing the organization of the supreme court, provides 'that it shall have appellate jurisdiction only.' Under a similar provision found in the constitutions of other countries whose institutions and laws are analogous to our own, it has been decided that their supreme courts cannot entertain jurisdiction in any case, until judgment has been rendered in the court below, or unless it be to do some act in aid of their appellate jurisdiction.

"The doctrine thus settled we leave open to future consideration, *as it is sufficient for us to decide that nothing final has been done in this case from which an appeal can be taken.*

"*The judge of the dictrict court should have rendered judgment, subject to the opinion of this court, on the points reserved.* By the 43d section of the act establishing the district courts, the judge of any district court may at his discretion, in any criminal case, reserve a question of law which to him may appear novel and difficult, for the consideration and discretion of the supreme court at the next succeeding term, and the supreme court shall pronounce such *sentence* or *judgment* as the district court ought to have pronounced.

"We think that this section of the act does not enlarge the

jurisdiction, but that the only construction which can be given to it consistently with the *paramount law,* is that it provides an additional mode of bringing a case of this nature into this court, after judgment shall have been rendered in the court below.

"This case having been sent up by the direction of the judge of the inferior court, it is ordered to be remanded to the district court of Travis County, without costs, for the final action and adjudication of that court." (Italics ours in part).

It will be observed that while the court did not strike down the statute in so many words as void, it did declare that the statute in order to be interpreted consistently with the Constitution—*"the paramount law"*—must be construed so as to require final judgment before appeal. This opinion was delivered in 1841.

The statute again came before the Supreme Court of the Republic in 1844 in the case of Nash & Mabbit v. The Republic, Dallam's Decisions, 631. The Supreme Court in an opinion written by Chief Justice Hemphill, one of the most distinguished jurists who had adorned this bench, held that the Supreme Court could not take jurisdiction of the case until final decree in the trial court. The case is stated in the opinion as follows:

"In this case the defendants, being guilty of an affray, were ordered by the court to pay fines respectively and to remain in custody until payment was made. After the entry of the judgment motions were made by the defendants separately for the arrest thereof; and on consideration of the motions judgment against Nash was arrested; but the court, regarding the grounds set forth in the motion made by the defendant, Mabbitt, as novel and difficult, made no decision thereon, but reserved them for the discretion and consideration of the Supreme Court. Were it competent for this tribunal to entertain jurisdiction of the points of law involved in this case, we might discuss the propriety or legality of entertaining a motion in arrest of judgment, after it has once been rendered by the court; *but the question reserved for our deliberation not having been decided below, we are without jurisdiction and can not properly consider any of the matters embraced in the record."* (Italics ours).

In declining to take jurisdiction of the case stated, Chief Justice Hemphill, speaking for the Court, said:

*"The constitution having declared that the jurisdiction of the supreme court shall be appellate only, we are limited to*

*the review of the adjudications of inferior courts; and until
their decisions are made, no subject matter arises on which the
revisory power of this court can be exerted.* See the case of
Republic v. Laughlin, ante, 412. It is therefore ordered that
the case be dismissed for want of jurisdiction." (Italics ours).

Chief Justice Stayton in his dissenting opinion in the case
of Darnall v. Lyon, 85 Texas, 455, 464, 22 S. W., 304, 960, had
occasion to refer to the two cases by the Supreme Court of the
Republic from which we have just quoted. He placed the same
interpretation upon these opinions that we have placed upon
them and also expressed the view which we have heretofore
expressed, that the Constitution of the Republic and our present
Constitution with reference to the jurisdiction of the Supreme
Court were similar and should receive the same interpretation.
Judge Stayton, in part, said:

*"The Constitution of the Republic conferred on the Supreme
Court appellate jurisdiction only, and the same is true of every
one of the Constitutions of the State; and, under all of them
it has been steadily held that the Supreme Court could not take
jurisdiction of any cause until a judgment final in its nature
had been rendered by the court from which the appeal was
prosecuted.*

"On December 22, 1836, a law was passed which prescribed,
that 'the judge of any District Court may at his discretion, in
any criminal case, reserve a question of law, which to him may
appear novel or difficult, for the consideration and discretion
of the Supreme Court at the next succeeding term, and the Su-
preme Court shall pronounce such sentence or judgment as the
District Court ought to have pronounced.' "

"Two cases arose under this statute in which the opinion of
the Supreme Court was sought, wherein there were no final
judgments, and in both the court declined to take jurisdiction.
The Republic v. Laughlin, Dallam, 412; Nash v. The Republic,
Dallam, 631.

"In the case last cited it was said, that 'the Constitution
having declared that the jurisdiction of the Supreme Court
shall be appellate only, we are limited to the review of the
adjudications of inferior tribunals, and until their decisions
are made, no subject matter arises on which the revisory power
of this court can be exerted. * * * It is therefore ordered that
the case be dismissed for want of jurisdiction.'

"If there had been final judgment the procedure would have
been deemed only as an additional mode of bringing the case
before the court; *but the decision has been at all times that the*

*appellate court can not act until the court whose decision it has power to review has made a decision.* Robinson v. Baillieul, 2 Texas, 160; Ewing v. Kinnard, 2 Texas, 164; Dow v. Hotchkiss, 2 Texas, 471; Phillips v. Hill, 3 Texas, 400; Warren v. Shuman, 5 Texas, 450; Gross v. McClaran, 8 Texas, 341; Stewart v. Jones, 9 Texas, 469; Little v. Morris, 10 Texas, 263; Martin v. Crow, 28 Texas, 613; Green v. Banks, 24 Texas, 522; Moore v. Schooner Anna Maria, 11 Texas, 655; Wampler v. Walker, 28 Texas, 599; Rodriguez v. Trevino, 54 Texas, 201; Linn v. Arambould, 55 Texas, 619; Railway v. Smith County, 58 Texas, 76; Milliken v. Smoot, 64 Texas, 171; Lumber Co. v. Williams, 71 Texas, 451.

"This is believed to be the universal rule, except as it may be departed from in cases in which appeals are allowed from interlocutory judgments, or in cases in which the exercise of jurisdiction becomes necessary to enable the appellate court to exercise jurisdiction conferred on it." (Italics ours).

■ The fact that the statute before us authorizes certified questions to be presented to the appellate courts upon agreement of counsel and that such an agreement was actually entered into in the instant case, can not have the effect of conferring jurisdiction upon the appellate courts, nor of relieving the Act of its constitutional infirmity. Jurisdiction over the subject matter of litigation can not be conferred by agreement. This type of jurisdiction exists by reason of the authority vested in the Court by the Constitution, or by statutes not in conflict therewith. 11 Texas Jurisprudence, p. 714, sec. 11, p. 715, sec. 12; 3 Texas Jurisprudence, p. 80, sec. 33, and authorities cited; Nevitt v. Wilson, 116 Texas, 29, 285 S. W., 1079; Phillips v. Hill, 3 Texas, 397.

In the case of Phillips v. Hill, just cited, the action was one of trespass to try title. The case was tried, and upon a special verdict judgment was rendered. The judgment as quoted in the opinion is as follows:

" 'In this case came the parties by their attorneys, and the demurrer having been withdrawn, and issue being joined upon the facts and merits of the case, it was ordered that a jury come; whereupon came the following twelve good and lawful men, to-wit: (here follow the jurors' names), who being duly elected, tried and sworn, well and truly to try the issue, find as follows, by way of special verdict, viz: We, the jury, find the following facts, viz: That Zeno Phillips and the defendant, Eliza M. Hill, were married in this county, in May, in the year 1831, and the said Zeno Phillips died in this county in the

month of May, 1835, leaving his widow, the said Eliza M. Hill, the defendant, and one child, Sarah Olivia Phillips, the only child of the said Zeno Phillips and the said Eliza M., his wife. That the said Sarah Olivia died in this county in the month of September, in the year 1841, under the age of puberty, intestate, and without issue. That the lands in controversy were acquired by Zeno Phillips, previous to his intermarriage with the said Eliza M., and that he died intestate. And they also say that the plaintiffs are the next of kin to the said Sarah Olivia, on the part of her father. *If, upon these facts, the law is for the plaintiffs, then we find for the plaintiffs. If the law is for the defendants, then we find for the defendants. We also find that it is agreed between the plaintiffs and defendants, that if the judgment in the supreme court shall be for the plaintiffs below, it shall be remanded, with instructions to the court below to institute a writ of inquiry to ascertain what amount of mesne profits shall be allowed plaintiffs, and what amount shall be allowed defendants for improvements, and amelioration of said lands.* And upon the foregoing facts, as found by the jury aforesaid, it is considered by the court that the said plaintiffs take nothing by their suit, and that the said defendants go hence without day, etc.

" 'And the said plaintiffs, by their attorney, gave notice of appeal, in open court, which appeal, by agreement, is to be without bond, except for costs, without prejudice.' " (Italics ours).

The case came before the Supreme Court on this verdict and judgment was reversed. In disposing of it this Court, speaking through Associate Justice Wheeler, at a time when he, Chief Justice Hemphill, and Associate Justice Lipscomb constituted the Court, in part, declared:

"We have felt some embarrassment respecting the disposition proper to be made of this cause, on account of the agreement of the parties, found by the special verdict. That is, in effect, that the judgment of this court shall be a final adjudication of the cause, only in the event that it shall be in favor of the defendant.

"The value of the improvements upon the land in controversy was put in issue by the pleadings. And the jury find that it is agreed between the parties, that, if the judgment of the supreme court shall be for the plaintiff, the cause shall be remanded for the purpose of a future adjudication of that issue. The jury, then, did not find the issue, but an agreement of the parties, not in issue, by which it appears that the matters in

controversy were not to be determined in the court below until after this court should have decided the question of title in favor of the plaintiff. Was this a legal verdict, upon which the court could give final judgment? We are of opinion that it was not. No principle is better settled than that the verdict must find the issues; and a verdict not responsive to the issues is bad, and will not support a judgment.

"There was here an issue in respect to the value of the improvements, but none respecting any agreement of the parties. Yet the jury expressly decline to find the issue, and proceed to find that which was not in issue. Most manifestly this was not a legal finding, within the settled rules and principles of the law applicable to the verdicts of juries. But it has been acquiesced in by the parties, both in the district court and in this court. Can this acquiescence and consent of the parties cure the objection, and authorize us to proceed to the adjudication and disposition of the cause indicated by the agreement in question? *If so, it is difficult to perceive any reason why the parties may not, at any time during the progress of a cause, in this way, take the opinion of the court here upon any question upon which they may desire it, and then constitute this court their ministerial agent to remand the cause for such further litigation as may have been contemplated by their original understanding and agreement. It is evident that the substitution of the agreement, in the verdict, in the place of a finding of the jury themselves upon the issues, was a device resorted to by the parties to obtain the judgment of this court upon the single question of title, before a final adjudication upon the whole merits in the court below; and hence it was an attempted evasion and violation of the law, which forbade an appeal until final judgment.*

"This is a proceeding which the law will not sanction; and the court below erred in permitting its forms to be employed to consummate such a purpose. The verdict did not constitute a legal basis on which to rest the judgment of the court. *No consent can cure the illegality, or give it validity here. To hold otherwise would be, in effect, to entertain original jurisdiction of the cause, by consent, and would be violative of the constitution of the appellate court. It would be to recognize the authority of the district court by a formal, final judgment, upon a verdict embracing a consent of parties to that effect, to refer to our decision any interlocutory judgment or legal proposition arising in the progress of a cause, before its final determination in that court.* And were we to proceed to adjudicate

and remand the cause upon the agreement of the parties, it is clear that our action would not be confined to the revising of a judgment of the district court, nor the giving of such judgment as that court ought to have given.

"*The district court has been organized and constituted for the actual adjudication of causes within its jurisdiction; not to sit merely for the preparation of questions for decision here. And it is the province of this court to decide those causes only which were actually litigated and adjudicated in the district court.*

"It must have been apparent to the court below that the verdict in this case was designed and contrived by the parties improperly, to give jurisdiction to this court, and it ought to have been set aside and annulled." (Italics ours).

■ Not only must the constitutional provisions before us be interpreted in the light of the *common law* as we have before stated, *but also in the light of the above opinions of this Court interpreting similar provisions of the Constitution of the Republic and State which had become and were a part of the accepted jurisprudence of this State when our present Constitution was framed and adopted.* 12 Corpus Juris, 717, sec. 69, and authorities *post.*

So interpreting the jurisdictional provisions heretofore quoted by us it is obvious that the appellate jurisdiction of the Courts of Civil Appeals and that of the Supreme Court (subject to exceptions next to be noted) can not be invoked until after final judgment in the trial courts of the State. This interpretation of the organic law as to the appellate power is not only consistent with the construction given similar language of previous Constitutions, but in complete harmony with our view above expressed that the jurisdiction of our trial courts embraces not only the power and duty to hear causes, but the power and duty to pass upon the facts and law and enter final decrees in accordance therewith; and then to execute their judgments, without interference by any other tribunal, except and until the appellate power of a revisory court is invoked.

The exceptions as to the necessity for final judgments before appeal to which we have referred above are those where the statutes permit appeals from certain interlocutory orders of trial courts, namely, those granting or refusing temporary injunctions, appointing receivers, and determining pleas of privilege. See Revised Statutes, Articles 2008, 2250, 4662. Under these statutes appeals are predicated upon judgments, which though interlocutory in form as effectively deprive the litigant

of his rights or his property for the time being as do final judgments or decrees.

The validity of these statutes is referable to the practice in common law chancery courts, to "*stare decisis*" and the amendment and consequent re-adoption of the Jurisdictional Section of the Constitution as to the Supreme Court as previously interpreted, and is not here involved. In the case before us neither an interlocutory nor final judgment has ever been rendered and the statute in so far as here involved does not require the entry of decrees before certification.

The inquiry naturally suggests itself that if the giving of advisory opinions to the district courts is not the exercise of judicial power and not within the appellate jurisdiction of the Courts of Civil Appeals and the Supreme Court, and that the appellate powers of these courts can not be invoked except upon appeal after judgment in the trial court, how may we justify the existing statutes and the practice under them relative to certified questions from the Courts of Civil Appeals to the Supreme Court? In all cases heretofore cognizable by certified questions there have been actual trials and final judgments which the appellate courts may set aside, reform, or affirm and enforce under their appellate powers. In the case before us under the statute we are discussing in so far as involved in this proceeding nothing of this sort is provided for nor has any such action taken place in the instant case. The differences in the statutes and the state of the records under them determine the question in favor of the power of the appellate courts to certify in the one case, and as here shown, against it in the other. Originally the statutes permitting certified questions from Courts of Civil Appeals to the Supreme Court were of very doubtful validity. If there exists any constitutional authority for the statutes and the practice under them this Court has never pointed it out. The question was before the Court in 1893, shortly after the enactment of the certified question statutes in the case of Darnell v. Lyon, 85 Texas, 455, 22 S. W., 304, 960, and the majority of the Court, Associate Justice Gaines and Henry, answered the questions certified by the Court of Civil Appeals without adverting to the constitutionality of the act under which the proceeding was before them. Chief Justice Stayton dissented in perhaps the strongest opinion he ever wrote, in which he held the certification statutes void. We have previously quoted from that opinion and will not here repeat what he said or quote further from it on the immediate point we are now discussing. It is available to the

Bar and will no doubt be read with interest. Suffice it to say that we think the opinion was and is unanswerable; that the majority of the court at that time did not attempt its refutation, nor has any subsequent court endeavored to answer it. The question apparently was raised in the motion to dismiss the certificate in the case of Wallis, Landes & Co. v. Stuart, 92 Texas, 568, 50 S. W., 567, but only the construction of the statute was argued, and the Court merely construed and applied the statute and made no reference to the constitutional question. However, notwithstanding the strong dissenting opinion of Chief Justice Stayton the statutes have been followed by this Court for forty years. The question being one of practice in which the power has been consistently exercised for a long period of time, *with no substantive right of the citizen involved,* we will presume that there existed then and that there exists now a constitutional basis for the law, *although elusive to us,* and sustain the statute. The principle of *stare decisis* is, we think, applicable. 11 Texas Jurisprudence, p. 838, sec. 96. In addition to the rule of *stare decisis* as a reason for sustaining the certification statutes we direct attention to the fact that in 1930 Section 3 of Article 5 of the Constitution, in which the jurisdiction of the Supreme Court is defined, was amended in such manner as to change only the length of the term of the Court. This we are constrained to regard as a re-adoption of this section of the Constitution, with the construction previously placed thereon by the Legislature in enacting the certification statutes, and of the courts in treating the law as valid by acting thereunder. 12 Corpus Juris, p. 717, sec. 69; Trigg v. State, 49 Texas, 645; Cox v. Robison, 105 Texas, 426, 150 S. W., 1149; City of Houston v. Scottish Rite Benevolent Assn., 111 Texas, 191, 230 S. W., 978; Pittman v. Byars, 51 Texas Civ. App., 83, 112 S. W., 102.

We know of no rule by which the constitutional basis for existing certification statutes may be extended to the Act before us, which calls for advisory action only, and requires no judgment or decree upon which the appellate power of the revisory courts may act.

In view of the importance of the questions involved in the certificate of the District Judge we regret that the jurisdiction of the appellate courts has not been invoked in a constitutional way, so that we might have assisted in their solution at this time.

However, we are clear that we have no jurisdiction of the certificate, that the Act under which the Certified questions are

before us is unconstitutional and void, and no other action may lawfully be taken by us than to dismiss the certificate, as provided by the rules of this Court. The Certificate of the Court of Civil Appeals is accordingly dismissed.