**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Relator,**

v.

**Hon. Jeff WORLEY, Justice of the Peace Precinct 4, Winkler County, Texas, and Jerry Eddy, Respondents.**

No. 5531.

Court of Civil Appeals of Texas.

El Paso.

May 5, 1961.

McDonald, Shafer & Gilliland, Odessa, for relator.

John R. Lee, Kermit, for respondents.

ABBOTT, Justice.

This is an action brought by State Farm Mutual Automobile Insurance Company, relator herein, for a writ of prohibition against the Honorable Jeff Worley, Justice of the Peace of Precinct 4, of Winkler County, Texas, and Jerry Eddy, Respondents herein, to prevent the trial of Cause No. 114, styled Jerry M. Eddy v. State Farm Mutual Insurance Company, which is now pending in the Justice Court of Precinct 4, Winkler County.

The present controversy arose as a result of the following fact situation. On October

4, 1959, there was a two-car collision on State Highway 18, in Winkler County, in which an automobile being driven by respondent Jerry M. Eddy collided with another automobile being driven by Joseph L. Braimer. Several occupants of the Braimer vehicle suffered injuries as a result of the collision. The vehicle being driven by respondent Eddy on the occasion in question was a 1956 Chevrolet owned by Chester King and wife, Jessie Lee King, but which was being used with their permission by their son, Chester Leo King. Eddy was driving the car with the permission of the King boy, but had no permission from the owners, Mr. and Mrs. King, to drive the automobile.

A policy of automobile liability insurance on the 1956 Chevrolet had been issued by relator, State Farm Mutual Automobile Insurance Company, to Chester King and wife, Jessie King, the named insured in such policy, affording coverage with limits of 10/20/5.

Following the collision, the occupants of the Braimer car sued Jerry Eddy for injuries sustained in the accident. Relator declined to defend the suits, contending that Eddy was not a permissive user of the vehicle, and that, under the terms and conditions of the policy, respondent Eddy was not an insured; and that relator, therefore, had no liability to Eddy, or on any judgment that might be entered against Eddy. The several suits brought against Eddy by the occupants of the Braimer car were consolidated and tried in the District Court of Winkler County as Cause No. 5754, styled Joseph L. Braimer et al. v. Jerry M. Eddy. In the trial of this cause, Jerry Eddy was defended by counsel of his own, but not by relator's counsel. On May 7, 1960, a judgment was entered against Jerry Eddy for $33,159.25, and such judgment has become final.

Respondent Jerry Eddy thereafter made a partial payment of $19.90 on the $33,000 judgment, and then filed a suit in the Justice Court of Winkler County, in which he alleged that a judgment had been recovered against him for $33,159.25 in the District Court case; plead that there was a certain policy of insurance issued by relator herein to Chester King which covered and inured to the benefit of plaintiff, Jerry Eddy; that he had paid the sum of $19.90 on such judgment, partially satisfying same, and therefore sued relator for reimbursement of the amount so expended.

After the Justice Court suit was filed by respondent, relator (State Farm Mutual Automobile Insurance Company) then brought suit for a declaratory judgment, a temporary restraining order and temporary injunction, in the District Court of Winkler County, for the purpose of determining the liability, if any, of the relator to respondent, and on the judgment obtained by Joseph L. Braimer and others against the respondent Eddy, under the terms and provisions of the policy of insurance involved in this case. By such suit, relator also sought to enjoin and restrain the parties in the Justice Court from proceeding in that case, pending disposition of the declaratory judgment action in the District Court.

In looking at the origin of this case, it is found that the relator here made no attempt to intercede in the case of Braimer et al. v. Eddy, in Cause No. 5754 in the District Court of Winkler County. There was no appeal from this case, and the judgment became final. Thereafter, a payment on the judgment of $19.90 was made by Eddy, and was evidently accepted. Eddy brought suit in the Justice of the Peace court in Winkler County for the return of his $19.90, in that the relator had a policy of insurance that provided him coverage. Relator attempted to restrain respondent, through the District Court of Winkler County, from proceeding with the trial in Justice Court and, failing there, attempted to move such cause to the Federal court, with no success. Then, an action for Declaratory Judgment was filed in the Winkler County District Court to determine the rights of relator under the terms of the policy. Thereafter, relator applied to this court for a writ of

prohibition, and a hearing was granted and a restraining order placed upon the Justice Court and respondent until such hearing.

We do not believe that this court had the authority to restrain the Justice Court, nor does it have the authority to issue the writ of prohibition. The writ of prohibition, or any other extraordinary writ, will not be granted where there is an adequate remedy provided by law, such as *an appeal* or writ of error. Clark v. Ewing et al., Tex.Civ.App., 196 S.W.2d 53. There must be a trial in the inferior court, and trial must result in a judgment disposing of all issues and parties, before appellate jurisdiction may attach. Constitution, Art. 5, secs. 3, 6, Vernon's Ann. St. The Constitution is specific in confiding trial jurisdiction to the district and county courts and other inferior courts. Texas Constitution, Art. 5, Secs. 8, 16 and 19. These provisions mean that those courts are to exercise that portion of the judicial power allocated to them, unimpeded by the supervision of any other tribunal except in so far as the powers of revision may be confided to other tribunals. The jurisdiction of these trial, or inferior, courts without exception embraces the power to hear and determine the matter in controversy according to established rules of law. Morrow v. Corbin, 122 Tex. 553, 62 S.W.2d 641, 644. Chief Justice Cureton, in the above case, further said:

"Again, jurisdiction is stated to be the authority by which judicial officers take cognizance of and decide causes, and this includes the power to determine the legal results to follow from the facts pleaded and proven."

Briefly stated, what we intend to say is that the jurisdiction of the trial courts under the Constitution, once it attaches, embraces every element of judicial power allocated to those tribunals, and includes, "(1) the power to hear facts, (2) the power to decide the issues of fact made by the pleadings, (3) the power to decide the questions of law involved, (4) the power to enter a judgment on the facts found in accordance with the law as determined by the court, (5) and to execute the judgment or sentence." * * * "That with the right of the trial court to exercise the powers thus confided to it, *no appellate court* can intervene, except in accordance with the authority given in the Constitution or valid statutes thereunder." Morrow v. Corbin, supra; Cleveland v. Ward, 116 Tex. 1, 285 S.W. 1063. The courts of civil appeals have no general power to grant writs to restrain what the courts of civil appeals might consider legally wrong acts, but have authority to issue only such writs as are necessary to enforce their jurisdiction. Vernon's Ann.Civ.Stat. Art. 1823; Pait v. International Brotherhood of Boilermakers, etc., Tex.Civ.App., 322 S.W.2d 349.

The only right this court would have to issue its writ of prohibition would be to protect its appellate jurisdiction. We would have no jurisdiction of a judgment in the Justice of Peace court involving $19.90, but the United States Supreme Court would have. In order to assume that our jurisdiction is imperiled, it seems that we must *also assume* that the Justice Court, in the present case, would ignore the arguments of relator that might be advanced in a plea in abatement or some other form, presented to it in order to maintain its jurisdiction. This, or any other court, can make no such assumption. A court which is authorized to issue extraordinary writs to enforce its jurisdiction may not exercise that power in aid of potential jurisdiction. Winfrey v. Chandler, 159 Tex. 220, 318 S.W.2d 59, and cases cited therein.

In the case at bar, the amount sued for is $19.90, an amount within the jurisdiction of the Justice Court. The prayer asks for no other relief. It is conceded that a judgment in this case will have the effect of interpreting liability under an insurance policy, as in the case of Bybee v. Fireman's Fund Ins. Co., Tex., 331 S.W.2d 910. We do not believe that this court has the authority to issue a writ of prohibition to

the Justice Court and respondent in this case, however, because of the assumptions we must make in order to involve our jurisdiction.

We therefore dismiss the order temporarily restraining the Justice of Peace and respondent, and deny the application for writ of prohibition.

FRASER, Justice (concurring).

This writer concurs substantially with the opinion of Associate Justice ABBOTT, of this Court. While not in complete agreement with all the provisions of said opinion, I do believe that, substantially, it is correct, and such belief is based on the following conclusions:

1. The jurisdiction of the various courts of this state, including justice courts, has been carefully set up, and it has been judicially said that such jurisdiction must be such that the court involved is free to act within the limits of its power.

2. It may well be true that the action of the Justice of the Peace may, indirectly or directly, decide a lawsuit involving a sum of money far in excess of that court's jurisdiction. If this is true, such has come about through no action or fault of this court, and I feel that this court is without power to attempt to remedy such situation, real or anticipated. (See language in Massoni case, cited at conclusion of this opinion.) Our powers and duties with reference to injunctions have been adjudicated many times, and I feel that, as an appellate court, we do not have the broad power of remedying what might seem to us an illogical situation. Along this same line, I do not feel we have the power, through injunctive procedures, to protect other than our own decisions and jurisdiction where the same has been satisfactorily and definitely established. If this situation is illogical and has potential misfortune for either party, it is my opinion that the matter is one invoking more our judicial curiosity than our jurisdictional power. We have no action before us on the part of

the Justice Court. He has not acted, other than to permit the case to be filed. If his decision or finding does, indirectly or directly, result in what seems to be an illogical disposition of a liquidated judgment far in excess of the monetary jurisdiction of his court, it is, to my mind, a situation that we had no part in creating, do not have the necessary powers to prevent, and is one which we can only assume might have been, or might be, presented to this court on appeal if tried in a court where appeal to this court is permissible.

Therefore, under the facts before us, I do feel that we are without the necessary power to prohibit the Justice Court from hearing and deciding the case before him. If, by reason of decisions of other courts, the possibility of a legally illogical result might exist, I cannot find authority for this court to anticipate such and remedy, or attempt to remedy or prevent, such possible action. Forman v. Massoni, Tex.Civ. App., 176 S.W.2d 366 (wr. ref.); Cleveland v. Ward, 116 Tex. 1, 285 S.W. 1063; Vernon's Ann.Civ.Stat. Art. 1823; Pait v. International Brotherhood of Boilermakers, etc., Tex.Civ.App., 322 S.W.2d 349; Winfrey v. Chandler, 159 Tex. 220, 318 S.W.2d 59. Bybee v. Fireman's Fund Ins. Co., Tex. 331 S.W.2d 910.

LANGDON, Justice (dissenting).

I respectfully dissent from the majority opinion in this cause.

I believe we have sufficient information before us to make a determination, as a matter of law, on the question of whether or not the subject matter of the controversy now pending in the Justice Court of Precinct 4, Winkler County, Texas, is within the jurisdiction of that court. Attached to relator's petition for writ of prohibition, among other exhibits, are the following:

(1) The original petition of plaintiff Jerry M. Eddy (respondent) filed in Cause No. 114 in the Justice Court case.

(2) The depositions of Chester King and wife, Jessie Lee King, the named insured

in the policy of insurance issued by Relator; the depositions of Chester Leo King and of respondent Jerry M. Eddy.

(3) Certified copy of the judgment in Cause No. 5754, styled Joseph L. Braimer et al. v. Jerry M. Eddy, as the same is consolidated with Causes Nos. 5755 and 5766, wherein judgment was recovered against respondent Eddy in the sum of $33,159.25.

(4) Copy of the coverage and liability provisions of the policy of insurance involved in the litigation, as well as copy of the application of Chester King to relator for the policy of insurance involved here.

Pursuant to the rule that the amount in controversy is determinable from the whole of the plaintiff's pleadings, it has been held that the prayer for judgment is of secondary importance and that the Justice has no jurisdiction where the total by correct summation exceeds Two Hundred Dollars. Hooper Lumber Co. v. Texas Fixture Co., 111 Tex. 168, 230 S.W. 141; Pecos & N. T. R. Co. v. Canyon Coal Co., 102 Tex. 478, 119 S.W. 294; Gossett v. Manley, Tex. Civ.App., 43 S.W.2d 622.

Relator contends, and the depositions on file herein reflect, that respondent Eddy had the permission of Chester Leo King, the son of the named insured, to drive the vehicle, but that he did not have the permission of the named insured to drive the car at the time that it was involved in the accident. Thus, it is relator's contention that Eddy was not a permissive user of the insured vehicle, and therefore not covered by the policy. Respondent Eddy contends (as reflected by his pleadings in the Justice Court) to the contrary. The only issue in the case is joined. It is the policy of insurance and the question of coverage that is in the controversy, and the determination of a $20,000 lawsuit, not the recovery of $19.90, which is only an incident to the actual controversy.

The courts of civil appeals are vested with certain appellate jurisdiction by the Constitution of Texas. In addition, the Constitution authorizes the Legislature to grant to these courts such other jurisdiction, original and appellate, as it sees fit. Under this provision, the Legislature has enacted several statutes giving to the courts of civil appeals original jurisdiction to issue certain extraordinary writs, and while only one of these (Article 6049c, Sec. 11), specifically authorizes the issuance of writs of prohibition, Article 1823, Vernon's Annotated Texas Civil Statutes, provides that these courts may issue *all writs necessary to enforce their jurisdiction.*

Many of the cases in which original proceedings have been instituted in courts of civil appeals for writs of prohibition have involved situations where a party has sought to prohibit a city council, a commissioners' court, or other such body, from performing a legislative or purely administrative function; or, to prohibit another court from performing some act (which, although perhaps erroneous) was clearly within the jurisdiction of such court to act upon. In each of these cases, an adequate remedy to test the propriety of the action complained of and sought to be restrained by writs of prohibition have been available after the act or thing complained of has been done. In such cases, courts of civil appeals have wisely refused the relief sought, on the ground that the court's potential, but not actual, jurisdiction was involved.

Such is not the case now before us. Here we have a court of inferior jurisdiction (not a political entity with legislative and administrative powers) exercising, or about to exercise, jurisdiction (judicial powers) in a controversy outside or beyond the limits of its jurisdiction. The record before us clearly reflects that the case has not only been filed, but has been set down for trial. From this, it may be assumed that the Justice Court accepted jurisdiction in the matter, and is not merely threatening to take jurisdiction. The only appropriate action the Justice can or should take in this matter is to dismiss the action upon the lifting of prohibition.

This is not a situation in which the inferior court has actual jurisdiction and prohibition is sought to prevent that jurisdiction from being wrongfully exercised. This is a case where the Justice Court has no jurisdiction at all, but is attempting to exercise jurisdiction over a matter or cause over which it has no constitutional or statutory authority to act. The situation is further confounded by the holdings in the case of Forman v. Massoni, Tex.Civ. App., 176 S.W.2d 366, (writ refused), and Bybee v. Fireman's Fund Insurance Co., Tex., 331 S.W.2d 910; Fireman's Fund Insurance Co. v. Bybee, Tex.Civ.App., 322 S.W.2d 657 in which writ was granted and then dismissed. Both the Massoni and the Bybee cases seem to announce the rule that once the Justice Court has accepted jurisdiction of a case, even though the case involves a matter over which the Justice Court does not have jurisdiction, if the amount of the final judgment in such case is less than $20.00 (or the amount required to confer appellate jurisdiction on the County Court), such judgment, even though not subject to judicial review (except possibly by the United States Supreme Court) is a final judgment, sufficient to invoke the principle of estoppel by judgment, and thus preclude a litigant, adversely affected by such judgment, from thereafter asserting a position contrary to the facts found or necessarily found by the Justice Court in order to support the judgment of such court.

The suit brought by Eddy, while in the form of an action at law to recover only the sum of $19.90, involved and invoked an adjudication of the rights of the parties in that suit (and possibly the rights of the judgment creditors on the judgment obtained by them against Eddy in the District Court (who are not parties in the Justice Court) ), under the terms and provisions of a policy of insurance providing coverage of $20,000 and for which sum relator is liable to respondent and/or respondent's judgment creditors, if it be determined that the coverage provisions of the policy in-

ured to the benefit of the respondent Eddy. It is Eddy's contention that he was covered by the policy provisions, and while he seeks only $19.90, he must secure a finding from the Justice Court favorable to this contention before he can, or would, be entitled to recover anything. Thus, the real issue involved in the Justice Court action is not the recovery of $19.90, but a determination of the rights of the parties under the policy of insurance.

I think the exhibits in this case, together with the pleadings filed by respondent, as plaintiff, in the Justice Court, clearly establish the fact that if Eddy has a claim at all against relator, such claim is for a liquidated sum of $20,000, and not merely a portion of that sum, as represented by the $19.90 which he elected to pay on the judgment obtained against him by the Braimers and others. The case, in my opinion, belongs in the District Court, and not in the Justice Court.

In a recent case by the Supreme Court of Texas, in an opinion by Justice Walker, a principle of law was clearly established, that respondent Eddy might have sued relator in a direct action in the District Court for the full amount of the coverage he claims, plus interest on the judgment. Plasky v. Gulf Insurance Co., Tex., 335 S.W.2d 581. Had he done so here, rather than attempt to split his cause of action jurisdiction unquestionably would have been in the District Court. I would hold that respondent, or any party to a law suit, may not arbitrarily split a cause of action, or voluntarily will that an arbitrary part of a liquidated demand be extinguished, in order to deprive a proper court of its jurisdiction or to confer jurisdiction upon an inferior court.

Article 1823 (supra) does not expressly restrict courts of civil appeals from issuing writs of prohibition, but does expressly confer upon such courts and the judges thereof the power and authority to issue writs of mandamus *"and all other writs necessary to enforce the jurisdiction of said courts."*

If all such suits were instituted in the Justice Court rather than in the courts of appropriate jurisdiction, and the judgment of such Justice Court, by reason of the amount involved, was not subject to review, as seems to be the case under the holdings announced in the Massoni and Bybee cases, supra, it would appear that that jurisdiction of not only the courts of civil appeals is threatened, but that the jurisdiction of all the courts of this State, except that of the justice courts, is threatened, with the only possible appeal being a questionable right of direct appeal to the Supreme Court of the United States.

In the interest of justice, and in order to promote and to preserve the integrity of the jurisdiction of our several courts, as that jurisdiction has been delegated and established by the Constitution and laws of the State of Texas, I would grant relator's application for writ of prohibition, and permanently restrain the parties and the Justice from proceeding with the cause here involved in the Justice Court.